UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CLAUDE BOLING,

        Plaintiff,        CIVIL NO: 07-11752

                                  HONORABLE JOHN CORBETT O'MEARA
                                  HONORABLE STEVEN D. PEPE

vs.

CORRECTIONAL MEDICAL SERVICES and
TERRY A. ARNOLD

        Defendants.
_____/


**ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE
TO FILE AN AMENDED COMPLAINT (DKT. #24),
AND
ORDER GRANTING DEFENDANT'S MOTION TO STAY DISCOVERY (DKT. #25)
AND
<u>ORDER DENYING PLAINTIFF'S MOTION TO COMPEL (DKT. #31)</u>**

This is a civil rights action brought by Plaintiff, a state prisoner, pursuant to 42 U.S.C. § 1983. Plaintiff sues JMF Nurse Terry Arnold and Correctional Medical Services, Inc. ("CMS), alleging that Defendant Arnold failed to properly diagnose and treat Plaintiff when he had appendicitis. Plaintiff further alleges that Defendant Arnold's conduct was the result of protocol established by CMS. On July 23, 2007, Defendant Arnold filed a motion for summary judgment for failure to exhaust administrative remedies (Dkt. #8). Plaintiff responded on August 27, 2007 (Dkt. #11). He also submitted another exhibit (a Step III grievance response recently received) on September 12, 2007 (Dkt. #23). Defendant CMS filed a motion to dismiss on September 13, 2007 (Dkt. #21).

1

On September 21, 2007, Plaintiff filed a motion to amend his Complaint to add another defendant, RN Deborah Cary, and to add a new claim charging a conspiracy among CMS, Arnold and Cary. (Dkt. #24). Plaintiff also served on Defendant Arnold's counsel Interrogatories directed to Defendant Arnold and RN Cary (Dkt. #25, Ex. 1). Defendant Arnold subsequently filed a motion to stay discovery pending the Court's ruling on Defendant's motion for summary judgment and dismissal because Plaintiff has not exhausted his administrative remedies as required by 42 U.S.C. § 1997e(a) (Dkt. #25). On October 24, 2007, Plaintiff filed a motion to compel answers to his Request for Production of Documents (Dkt. #31). All pre-trial matters have been referred under 28 U.S.C. § 636(b) (Dkt. #2). For the reasons indicated below, it is **ORDERED** that Plaintiff's motion to amend and Plaintiff's motion to compel are **DENIED**. It is **FURTHER ORDERED** that Defendant's motion to stay discovery is **GRANTED**.

**I.    BACKGROUND**

Plaintiff was an inmate at Southern Michigan Correctional Facility ("JFM") in Jackson, Michigan at the time of the events leading to this action; he currently is incarcerated at Crane Correctional Facility in Coldwater, Michigan. On December 27, 2006, Plaintiff complained of a stomach ache. After requesting medical assistance, he saw Defendant Arnold, a registered nurse employed by the prison. Defendant Arnold performed an examination following nursing protocol for the facility. Plaintiff was given antacids and told to return if he was not feeling better. Plaintiff's stomach pain continued over the next two days and he once again saw a nurse; the same protocol was followed during this second visit. It is assumed that Plaintiff now believes this second nurse to be RN Deborah Cary. Her diagnosis was stomach flu (Cplt, p. 2).

On December 30, 2006, Plaintiff's stomach ache still had not subsided. It was severe

enough that Plaintiff was taken to the hospital where he was diagnosed as having appendicitis. Plaintiff's appendix was subsequently removed and he was discharged from the hospital on January 8, 2007.

Plaintiff alleges that his rights under the Eighth Amendment were violated because the nurses and nursing protocol did not provide him with adequate medical care. Prior to filing his Complaint, Plaintiff filed Grievance No. JMF-07-01-00179-12d3 with respect to medical treatment he received by the nursing staff (Cplt, § III). Plaintiff's grievance was denied, a decision that he appealed to the Step II level. *Id*. Plaintiff had not received a Step II decision at the time he filed his Complaint, but that appeal was ultimately denied. *Id*. Plaintiff further admits that he had not appealed to the Step III level at the time he filed this Complaint. *Id.*

## II. ANALYSIS

### A. The Legal Standards

Under Fed. R. Civ. P. § 15(a):

> [a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served. . . .Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

Courts are liberal in allowing parties to amend complaints, "which reinforces one of the basic policies of the federal rules – that pleadings are not an end in themselves but are only a means to assist in the presentation of a case to enable it to be decided on the merits." 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1473, at 521 (2d ed. 1990). While the Supreme Court has stated that liberally granting leave to amend complaints under Rule 15(a) is "a mandate to be heeded," *Foman v. Davis*, 371 U.S. 178, 182 (1962), the Court stated several reasons to deny motions to amend, among them "undue prejudice to the

3

opposing party by virtue of allowance of the amendment, [and] futility of amendment . . ." *Id.*

The standard of futility is whether a proposed amendment would withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6). This is a question of law subject to *de nevo* review. *Yuhasz v. Brush Wellman, Inc.,* 341 F.3d 559, 569 (6th Cir. 2003); *Inge v. Rock Fin. Corp.,* 281 F.3d 613, 625 (6th Cir. 2002). Fed. R. Civ. P 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint. *Bell Atlantic Corp. v. Twombly,* 550 U.S. ----, 127 S.Ct. 1955, 1965 (2007)*, Erickson v. Pardus,* 127 S.Ct. 2197, 2200 (2007). "Rule 12(b)(6) does not countenance. . dismissals based on a judge's disbelief of a complaint's factual allegations," *Twombly,* 127 S.Ct. at 1965 (quoting *Neitzke v. Williams,* 490 U.S. 319, 327 (1989)). "However, while liberal, this standard of review does require more than the bare assertion of legal conclusions." *Columbia Natural Resources, Inc. v. Tatum* 58 F.3d 1101, 1109 (6th Cir. 1995). "In practice, 'a ... complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *In re DeLorean*, 991 F.2d 1236, 1240 (6th Cir. 1993) (emphasis in original) (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)). *See also, Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir.1987) (liberal Rule 12(b)(6) review is not afforded legal conclusions and unwarranted factual inferences); *Ana Leon T. v. Federal Reserve Bank*, 823 F.2d 928, 930 (6th Cir. 1987) (*per curiam*) (mere conclusions are not afforded liberal Rule 12(b)(6) review).

4

Here we are dealing with a pro se Plaintiff. *Haines v. Kerner,* 404 U.S. 519, 520 (U.S.1972), noted that "allegations [of a pro se claimant] . . . however inartfully pleaded" . . . . are held "to less stringent standards than formal pleadings drafted by lawyers." Yet, the broad scope of *Haines* is open to question and seems to have been restricted by *Twombly*, 127 S.Ct. 1968. *Haines* relied on the often quoted statement from *Conley v. Gibson*, 355 U.S. 41, 46 (1957), which spoke of "the accepted rule that a complaint should not be dismissed for failure to state a claim unless *it appears beyond doubt* that the plaintiff can *prove no set of facts* in support of his claim which would entitle him to relief" (emphasis supplied). That portion of *Conley* was expressly rejected in *Twombly*, 127 S.Ct. at 1968, because under a "literal reading of *Conley*'s 'no set of facts' standard, a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery."

In rejecting this literal reading of *Conley*, the *Twombly* opinion requires that pleadings state sufficient facts to show *not just a possible, but a "plausible" claim of relief* (emphasis supplied). Instead of the 'no set of facts' standard of *Conley, Twombly* endorsed the standard that a complaint be plausible to the extent that from the facts alleged there is a " 'reasonably founded hope' " that a plaintiff would be able to make a case," citing *Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336, 347 (2005) and its quote from *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 741(1975). *Erickson v. Pardus,* 127 S.Ct. 2197, (2007), decided the same term as *Twombly*, upheld a poorly drafted *pro se* inmate's Eighth Amendment claim quoting, both *Twombly* and *Conley*, but it did not cite *Haines* nor the 'no set of facts' standard from *Conley*.

5

The *Twombly* limitation on *Conley* and *Haines* is consistent with the holdings of several prior Sixth Circuit opinions. While acknowledging that the standard for dismissals under Rule 12(b)(6) is liberal and that *pro se* claimants are given special consideration, a complaint nonetheless "must contain either direct or inferential allegations regarding all the material elements" and the allegations must constitute "more than bare assertions of legal conclusions." *Tahfs v. Proctor,* 316 F.3d 584, 590 (6th Cir. 2003)*,* quoting *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir. 1988) (internal quotation marks and citations omitted). *Spadafore v. Gardner,* 330 F.3d 849 (6th Cir. 2003) (stating that the complaint must contain more than a bare averment that the Plaintiff "wants compensation and is entitled to it or a statement of facts that merely creates a suspicion that the pleader might have a right of action." (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1216, at 163 (2d ed.1990)); *In re Sophomore Dane Group, Inc.,* 123 F.3d 394, 400 (6th Cir. 1997)("bare allegations of legal conclusions" are not sufficient because they are not the core facts. ); *In re Delorean Motor Co.,* 991 F.2d 1236. 1240 (6th Cir.1993)(a complaint must include direct or indirect allegations "respecting all of material elements to sustain a recovery under some viable legal theory."); *Russell v. Tennessee Dept. of Correction,* No. 03-6217, 2004 WL 834741 (6th Cir. April 16, 2004) ("The court is not required to accept non-specific factual allegations and inferences or unwarranted legal conclusions.") (unpublished, citations omitted). *See Ana Leon T. v. Federal Reserve Bank*, 823 F.2d 928, 930 (6th Cir. 1987)(Plaintiff has made only conclusory allegations. Such allegations cannot support an equal protection claim).

**B.** **Factual Analysis**

(1) Plaintiff's Motion to Amend his Complaint

      i.     **RN Deborah Cary**

Under the Prisoner Litigation Reform Act, a prison inmate cannot maintain a civil rights action challenging prison conditions if he did not first exhaust "such administrative remedies as are available." The Supreme Court clarified that a prisoner must follow the state corrections system's procedures and *properly* exhaust all administrative remedies before he may bring a cause of action in federal court. *Woodford v. Ngo*, 126 S. Ct. 2378 (2006). Proper exhaustion requires "compliance with an agency's deadlines and other critical procedural rules." *Id.* at 2386. The *Woodford* Court explained:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . . For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court. And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds. We are confident that the PLRA did not create such a toothless scheme.

*Id.* at 2388. Thus, an untimely or otherwise improper grievance, even though appealed through all steps of a grievance procedure, does not fulfill the PLRA exhaustion requirement.

Prisoners at MDOC facilities are given the right to "[seek] redress for alleged violations of policy and procedure or unsatisfactory conditions," but prisoners making grievances must follow certain rules and deadlines. PD Preamble. These requirements are laid out in MDOC Policy Directive, Prisoner/Parolee Grievances (the "Policy Directive" or "PD").

7

The Policy Directive first requires that, within two business days of becoming aware of a grievable issue, a prisoner must first make an informal attempt to resolve it, unless he is prevented from doing so by circumstances outside of his control. PD § R. If he is dissatisfied with the result of this attempt, he may proceed to Step I of the grievance process. On a form supplied by MDOC, the prisoner must briefly describe the facts of the issue being grieved. PD § T. This form must be filed with a designated Grievance Coordinator within five business days of the prisoner's informal attempt at resolution. PD § X.

If the prisoner is dissatisfied with the Step I response, he may appeal to Step II by obtaining an appeal form within five business days of the response and submitting the appeal within five business days of obtaining the form. PD § DD. The Step II respondent is designated by the Policy Directive, such as the Parole Board Chairperson for grievances involving the Parole Board. If the prisoner is still dissatisfied after receiving the Step II response, he may appeal to Step III using the same appeal form. The Prisoner Affairs Section, on behalf of the MDOC Director, is the respondent for Step III appeals.

Exhaustion of this process is a precondition to filing a lawsuit. 42 U.S.C § 1997e(a); *Porter v Nussle*, 534 U.S. 516, 524 (2002). Moreover, a plaintiff may not amend his complaint to cure an exhaustion defect. *Baxter v Rose*, 305 F.3d 486, 488 (6th Cir. 2002). Indeed, the United States Supreme Court has held that permitting appeals of improperly filed grievances "would permit a prisoner to bypass deliberately and flagrantly administrative review without any risk of sanction." *Woodford*, 126 S. Ct. at 2390. A grievance that does not comply with the procedural requirements of a prison's grievance policy, such as time deadlines, is not properly exhausted, and a lawsuit cannot proceed. *Woodford* 126 S. Ct. at 2378; *Jones v Bock, et al,* 127

S Ct 910, 923-24 (2007).

The applicable prison grievance policy in this case is MDOC PD 03.02.130 (effective date 12/19/2003). This policy details the applicable administrative process for the treatment of inmate grievances. PD 03.02.130 outlines a three step grievance process; to properly exhaust, all three steps of this process must be completed before filing a lawsuit (Dkt. #8, Ex. 1, PD 03.02.130, "Prisoner/Parolee Grievances" (eff 12/19/2003), Section R). Furthermore, PD 03.02.130 requires that grievances be filed in a timely manner. *Id*. at Section (G)(4).

In the present case, Plaintiff has failed to exhaust because he had not completed the three step grievance process detailed in PD 03.02.130 prior to filing this law suit. Plaintiff filed a Step I grievance on January 23, 2007 (Dkt. #8, Ex 2, Grievance JMF 07-01-00179-12d3, Step I). He subsequently filed a Step II appeal after receiving his Step I response on February 21, 2007 (Dkt. #8, Ex. 3, Grievance JMF 07-01-00179-12d3, Step II). Step II responses are generally due within fifteen days of accepting the appeal (Dkt. #8, Ex. 1, Section EE); however, a fifteen day extension on this time period may be granted. *Id.* at Section UU. Such an extension was granted in Plaintiff's case, so that a thorough investigation could be completed (Dkt. #8, Ex. 5, MDOC memorandum informing Plaintiff of extension granted for his grievance). While the original due date was March 15, 2007, the new due date for the Step II grievance response was March 29, 2007 (Dkt. #8, Ex. 5).

Although Plaintiff had not received a Step II response nor had he filed a Step III appeal, he initiated this action on March 26, 2007. Indeed, Plaintiff admits as much in his Complaint (Cplt, ¶ III(C)(1)). MDOC had until March 29, 2007, to provide Plaintiff with a response to his Step II grievance. Therefore, it is clear that Plaintiff filed this lawsuit prematurely.

9

In addition to failing to complete the grievance process, Plaintiff has not complied with the required time deadlines. PD 03.02.130 requires that a prisoner wishing to file a grievance first attempt to settle any issues with the staff member involved in the incident within two business days of becoming aware of the grievable issue (Dkt. #8, Ex. 1, Section R). If this does not resolve the issue, the prisoner then has five business days in which to file a Step I grievance. *Id.* at section X. This essentially gives the prisoner seven business days to file his Step I grievance. In the present case, Plaintiff exceeded these time limits. The incident leading to the grievance began on December 27, 2006, and ended, at the latest, on January 8, 2007, when Plaintiff was released from the hospital and back into the regular prison environment. Adhering to the rule allowing seven business days to file a Step I grievance, Plaintiff's Step I grievance should have been filed at the latest on January 17, 2007. Yet, Plaintiff waited until January 23 to file his grievance, more than two weeks after he was released from the hospital and nearly a month after the incident being challenged. It is assumed that his hospital stay and medical condition were valid reasons for delay in filing his Step I grievance. Yet, the calculations above excluded this period and Plaintiff does not explain why the grievance was tardy even when times are calculated from dates after Plaintiff's discharge from the hospital (Dkt. #8, Ex. 1, Section (G)(4) (allows for untimely grievances if there is "a valid reason for the delay")).

On September 21, 2007, Plaintiff filed an "added exhibit," which contains his Step III grievance response dated August 10, 2007, and approved August 21, 2007 (Dkt. #23). The response denies Plaintiff's claim. Nevertheless, the filing of this exhibit does not cure the exhaustion defect in Plaintiff's Complaint.

Plaintiff was required to complete the grievance process before commencing this civil

action. Because Plaintiff commenced this action on March 26, 2007, before receiving a response to his Step II grievance and before filing a Step III grievance, he had failed to exhaust his claims in a proper fashion prior to filing. While Plaintiff might argue that he exhausted prior to seeking to add Deborah Cary as a Defendant, accepting such an argument when the other defendants need be dismissed as noted in the Report and Recommendation issued this date, would be inefficient and additionally would undercut the policy reasons for Congress enacting the exhaustion rule. It would allow improperly filed law suits to serve as vehicles to add (or in effect substitute) other defendants. This litigation was improperly commenced; it should be dismissed; it should not be expanded to add another defendant. Accordingly, Plaintiff's motion to add RN Deborah Cary to

this lawsuit is **DENIED**.

        ii.       **The Conspiracy Charge**

Plaintiff also seeks to add a new claim in an amended complaint, that Defendants CMS, Arnold and RN Cary conspired as prohibited by 42 U.S.C. § 1985(2) and §1986 to deny him equal protection of the laws.

A conspiracy claim under § 1985 requires proving these elements:

(1) a conspiracy involving two or more persons
(2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws and
(3) an act in furtherance of the conspiracy
(4) which causes injury to a person or property, or deprivation of any right or privilege of a citizen of the United States.

See *Johnson v Hills & Dales General Hospital*, 40 F.3d 837, 839 (6th Cir. 1994), cert. den, 115 S. Ct. 1698 (1995). A claim of conspiracy cannot be based on conclusory statements. More than mere speculation and conjecture is required. See *Moore v City of Paducah*, 890 F.2d 831, 834

(6th Cir. 1989).

The following statements were made by Plaintiff in connection with his conspiracy charge:

> This Motion to amend is to cure the deficiencies in the original pleading and to show a clear violation of plaintiff's Eight Amendment rights and to show that this civil case as a form of medical materiality misrepresentation of medical documents, and a form of FRAUD, on the Defendant Arnold's behalf, and add the claim of Civil Rights Conspiracy under 42 U.S.C. 1985(2) and 1986.
>
> * * *
>
> All named Defendants herein have committed the act of Civil Rights Conspiracy. The Defendants conspire to obstruct "the due course of justice with intent to deny any citizen the equal protection of the law and to harm plaintiff from enforcing or attempting to enforce the right to equal protection."

(Dkt. #24, pp. 2-3).

These statements are insufficient to support a claim of conspiracy. They are nothing more than conclusory statements that are unsupported by any factual basis. Because Plaintiff's conspiracy charge is mere speculation, it would be improper to allow Plaintiff to add it to his Complaint. Accordingly, Plaintiff's motion to add a conspiracy claim is **DENIED** as futile.

(2) Defendant's Motion to Stay Discovery and Plaintiff's Motion to Compel

On September 27, 2007, Defendant Arnold filed a motion to stay discovery until this Court ruled on Defendant's motion for summary judgment (Dkt. #25). Plaintiff has also filed an October 24, 2007, motion to compel answers to his Request for Production of Documents (Dkt. #31). In the separate Report and Recommendation issued this date, it is recommended this action be dismissed in its entirety against the two named Defendants. Accordingly, it is **ORDERED** that Defendant Arnold's motion to stay discovery is **GRANTED** pending a ruling on that Report and Recommendation and Plaintiff's motion to compel is **DENIED** without prejudice

to renewal if the Report and Recommendation is not accepted.

**III. ORDER**

For the reasons indicated above, it is **ORDERED** that:

(1) Plaintiff's motion to amend is **DENIED.**

(2) Defendant Arnold's motion to stay discovery is **GRANTED** pending a ruling on the Report and Recommendation; and

(3) Plaintiff's motion to compel is **DENIED** without prejudice to renewal if the Report and Recommendation is not accepted.

The parties to this action may object to and seek review of this Order, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and LR 72.1(d). Any objections are required to specify the part of the Order to which the party objects and state the basis of the objection. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon the Magistrate Judge.

**SO ORDERED.**

Dated: October 31, 2007        s/ Steven D. Pepe
Flint, MI                      United States Magistrate Judge

**CERTIFICATE OF SERVICE**

This is to certify that on October 31, 2007, I electronically filed the foregoing Scheduling Order with the Clerk of the Court using the ECF system which will send notification of such filing to the following parties: Christine M. Campbell, Michael D. Kennedy, and I hereby certify that I have mailed a copy of the Scheduling Order to the following non-ECF parties: Claude Boling #191936, Florence Crane Correctional Facility, 38 Fourth St., Coldwater, MI 49036

    s/ James P. Peltier
    James P. Peltier
    Courtroom Deputy Clerk
    U.S. District Court
    600 Church St.
    Flint, MI 48502
    810-341-7850
    pete_peltier@mied.uscourts.gov