UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLAUDE BOLING,

        Plaintiff,                  CIVIL NO: 07-11752

                                    HONORABLE JOHN CORBETT O'MEARA
                                    HONORABLE STEVEN D. PEPE

vs.

CORRECTIONAL MEDICAL SERVICES, INC. and
TERRY A. ARNOLD

        Defendants.
_____/

## REPORT AND RECOMMENDATION

On March 26, 2007, Plaintiff commenced this action, seeking relief under 42 U.S.C. § 1983 for violation of his civil rights. While this action was originally filed in the United States District Court for the Western District of Michigan, it was transferred to the Eastern District pursuant to 28 U.S.C. § 1406(a) (Dkt. #1). In his Complaint, Plaintiff alleges that, while incarcerated at the Southern Michigan Correctional Facility ("JFM"), Defendant JFM Nurse Terry Arnold denied him appropriate medical care in violation of the Eighth Amendment of the Constitution. Plaintiff further alleges that Defendant Arnold's conduct was the result of protocol established by Correctional Medical Services, Inc. ("CMS"). Plaintiff seeks $10 million in compensatory and punitive damages from Defendants, among other claims for relief (Cplt, § VI).

Defendant Arnold filed a motion for summary judgment based on failure to exhaust administrative remedies on July 23, 2007 (Dkt. #8) to which Plaintiff responded on August 27,

1

2007 (Dkt. #11). On September 13, 2007, Defendant CMS filed a motion to dismiss on similar grounds (Dkt. #21). All pre-trial matters were referred under 28 U.S.C. § 636(b) (Dkt. #2). For the reasons stated below, it is **RECOMMENDED** that both Defendant Arnold's motion for summary judgment and Defendant CMS's motion to dismiss be **GRANTED**, and this case be dismissed.

## I. BACKGROUND

Plaintiff was an inmate at Southern Michigan Correctional Facility in Jackson, Michigan at the time of the events leading to this action; he currently is incarcerated at Crane Correctional Facility in Coldwater, Michigan. On December 27, 2006, Plaintiff complained of a stomach ache. After requesting medical assistance, he saw Defendant Arnold, a registered nurse employed by the Michigan Department of Corrections ("MDOC"). Defendant Arnold performed an examination following nursing protocol for the facility. Plaintiff was given antacids and told to return if he was not feeling better. Plaintiff's stomach pain continued over the next two days and he once again saw a nurse; the same protocol was followed during this second visit. Her diagnosis was stomach flu (Cplt, p. 2).

On December 30, 2006, Plaintiff's stomach ache still had not subsided. It was severe enough that Plaintiff was taken to the hospital where he was diagnosed as having appendicitis. Plaintiff's appendix was subsequently removed and he was discharged from the hospital on January 8, 2007.

Plaintiff alleges that his rights under the Eighth Amendment were violated because the nurses and nursing protocol did not provide him with adequate medical care. Prior to filing his Complaint, Plaintiff filed Grievance No. JMF-07-01-00179-12d3 with respect to medical

treatment he received by the nursing staff (Cplt, § III). Plaintiff's grievance was denied, a decision that he appealed to the Step II level. *Id*. Plaintiff had not received a Step II decision at the time he filed his Complaint, but that appeal was ultimately denied. *Id*. Plaintiff further admits that he had not appealed to the Step III level at the time he filed this Complaint. *Id*.

## II. ANALYSIS

### A. The Legal Standards

(1) <u>Legal Standard for Motions to Dismiss</u>

Fed. R. Civ. P 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even in everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. ----, 127 S.Ct. 1955, 1965 (2007), *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007). "Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations," *Twombly*, 127 S.Ct. at 1965 (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).

"However, while liberal, this standard of review does require more than the bare assertion of legal conclusions." *Columbia Natural Res., Inc. V. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1994). "In practice, a ... complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *In re DeLorean*, 991 F.2d 1236, 1240 (6th Cir. 1993) (emphasis in original) (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir.1988)). *See also*, *Morgan v. Church's*

*Fried Chicken*, 829 F.2d 10, 12 (6th Cir.1987) (liberal Rule 12(b)(6) review is not afforded legal conclusions and unwarranted factual inferences); *Ana Leon T. v. Federal Reserve Bank*, 823 F.2d 928, 930 (6th Cir. 1987) (per curiam) (mere conclusions are not afforded liberal Rule 12(b)(6) review).

*Conley v. Gibson*, 355 U.S. 41, 46 (1957), spoke of "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can *prove no set of facts* in support of his claim which would entitle him to relief." (Emphasis supplied.) *Twombly*, notes that under a "literal reading of *Conley's* 'no set of facts' standard, a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." *Twombly*, 127 S.Ct. at 1968. *Twombly*, rejects this literal reading of *Conley* and required that pleadings state sufficient facts to show not just a possible, but a "plausible" claim of relief. Instead of the 'no set of facts' standard of *Conley*, *Twombly* endorsed the standard that a complaint be plausible to the extent that from the facts alleged there is a " 'reasonably founded hope' that a plaintiff would be able to make a case," citing *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 347 (2005) and its quote from *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 741 (1975).

(2) <u>Legal Standard for Summary Judgment</u>

Under Fed. R. Civ. P. 56, summary judgment is to be entered if the moving party demonstrates there is no genuine issue as to any material fact. The Supreme Court has interpreted this to mean that summary judgment should be entered if the evidence is such that a reasonable jury could find only for the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

4

242, 249 (1986). The moving party has "the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). *See also Lenz v. Erdmann Corp.*, 773 F.2d 62 (6th Cir. 1985). In resolving a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party. *See Duchon v. Cajon Co.*, 791 F.2d 43, 46 (6th Cir. 1986); *Bouldis v. United States Suzuki Motor Corp.*, 711 F.2d 1319 (6th Cir. 1983). But as the Supreme Court wrote in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

Moreover, when a motion for summary judgment is filed, the adverse party may not merely rely "upon the mere allegations or denials of the adverse party's pleading, but . . . by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

### B. Factual Analysis

Under the Prisoner Litigation Reform Act, a prison inmate cannot maintain a civil rights action challenging prison conditions if he did not first exhaust "such administrative remedies as are available." The Supreme Court clarified that a prisoner must follow the state corrections system's procedures and *properly* exhaust all administrative remedies before he may bring a

5

cause of action in federal court. *Woodford v. Ngo*, 126 S. Ct. 2378 (2006). Proper exhaustion requires "compliance with an agency's deadlines and other critical procedural rules." *Id.* at 2386. The *Woodford* Court explained:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . . For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court. And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds. We are confident that the PLRA did not create such a toothless scheme.

*Id.* at 2388. Thus, an untimely or otherwise improper grievance, even though appealed through all steps of a grievance procedure, does not fulfill the PLRA exhaustion requirement.

Prisoners at MDOC facilities are given the right to "[seek] redress for alleged violations of policy and procedure or unsatisfactory conditions," but prisoners making grievances must follow certain rules and deadlines. PD Preamble. These requirements are laid out in MDOC Policy Directive, Prisoner/Parolee Grievances (the "Policy Directive" or "PD").

The Policy Directive first requires that, within two business days of becoming aware of a grievable issue, a prisoner must first make an informal attempt to resolve it, unless he is prevented from doing so by circumstances outside of his control. PD § R. If he is dissatisfied with the result of this attempt, he may proceed to Step I of the grievance process. On a form supplied by MDOC, the prisoner must briefly describe the facts of the issue being grieved. PD § T. This form must be filed with a designated Grievance Coordinator within five business days of

6

the prisoner's informal attempt at resolution. PD § X.

If the prisoner is dissatisfied with the Step I response, he may appeal to Step II by obtaining an appeal form within five business days of the response and submitting the appeal within five business days of obtaining the form. PD § DD. The Step II respondent is designated by the Policy Directive, such as the Parole Board Chairperson for grievances involving the Parole Board. If the prisoner is still dissatisfied after receiving the Step II response, he may appeal to Step III using the same appeal form. The Prisoner Affairs Section, on behalf of the MDOC Director, is the respondent for Step III appeals.

Exhaustion of this process is a precondition to filing a lawsuit. 42 U.S.C § 1997e(a); *Porter v Nussle*, 534 U.S. 516, 524 (2002). Moreover, a plaintiff may not amend his complaint to cure an exhaustion defect. *Baxter v Rose*, 305 F.3d 486, 488 (6th Cir. 2002). Indeed, the United States Supreme Court has held that permitting appeals of improperly filed grievances "would permit a prisoner to bypass deliberately and flagrantly administrative review without any risk of sanction." *Woodford*, 126 S. Ct. at 2390. A grievance that does not comply with the procedural requirements of a prison's grievance policy, such as time deadlines, is not properly exhausted, and a lawsuit cannot proceed. *Woodford* 126 S. Ct. at 2378; *Jones v Bock, et al,* 127 S Ct 910, 923-24 (2007).

The applicable prison grievance policy in this case is MDOC PD 03.02.130 (effective date 12/19/2003). This policy details the applicable administrative process for the treatment of inmate grievances. PD 03.02.130 outlines a three step grievance process; to properly exhaust, all three steps of this process must be completed before filing a lawsuit (Dkt. #8, Ex. 1, PD 03.02.130, "Prisoner/Parolee Grievances" (eff 12/19/2003), Section R). Furthermore, PD

03.02.130 requires that grievances be filed in a timely manner. *Id*. at Section (G)(4).

In the present case, Plaintiff has failed to exhaust because he had not completed the three step grievance process detailed in PD 03.02.130 prior to filing this law suit. Plaintiff filed a Step I grievance on January 23, 2007 (Dkt. #8, Ex 2, Grievance JMF 07-01-00179-12d3, Step I). He subsequently filed a Step II appeal after receiving his Step I response on February 21, 2007 (Dkt. #8, Ex. 3, Grievance JMF 07-01-00179-12d3, Step II). Step II responses are generally due within fifteen days of accepting the appeal (Dkt. #8, Ex. 1, Section EE); however, a fifteen day extension on this time period may be granted. *Id.* at Section UU. Such an extension was granted in Plaintiff's case, so that a thorough investigation could be completed (Dkt. #8, Ex. 5, MDOC memorandum informing Plaintiff of extension granted for his grievance). While the original due date was March 15, 2007, the new due date for the Step II grievance response was March 29, 2007 (Dkt. #8, Ex. 5).

Although Plaintiff had not received a Step II response nor had he filed a Step III appeal, he initiated this action on March 26, 2007. Indeed, Plaintiff admits as much in his Complaint (Cplt, ¶ III(C)(1)). MDOC had until March 29, 2007, to provide Plaintiff with a response to his Step II grievance. Therefore, it is clear that Plaintiff filed this lawsuit prematurely.

In addition to failing to complete the grievance process, Plaintiff has not complied with the required time deadlines. PD 03.02.130 requires that a prisoner wishing to file a grievance first attempt to settle any issues with the staff member involved in the incident within two business days of becoming aware of the grievable issue (Dkt. #8, Ex. 1, Section R). If this does not resolve the issue, the prisoner then has five business days in which to file a Step I grievance. *Id.* at section X. This essentially gives the prisoner seven business days to file his Step I

8

grievance.  In the present case, Plaintiff exceeded these time limits.  The incident leading to the grievance began on December 27, 2006, and ended, at the latest, on January 8, 2007, when Plaintiff was released from the hospital and back into the regular prison environment.  Adhering to the rule allowing seven business days to file a Step I grievance, Plaintiff's Step I grievance should have been filed at the latest on January 17, 2007.  Yet Plaintiff waited until January 23 to file his grievance, more than two weeks after he was released from the hospital and nearly a month after the incident being challenged.  It is assumed that his hospital stay and medical condition were valid reasons for delay in filing his Step I grievance.  Yet, the calculations above excluded this period and Plaintiff does not explain why the grievance was tardy even when times are calculated from dates after Plaintiff's discharge from the hospital (Dkt. #8, Ex. 1, Section (G)(4) (allows for untimely grievances if there is "a valid reason for the delay")).

On September 21, 2007, Plaintiff filed an "added exhibit," which contains his Step III grievance response dated August 10, 2007, and approved August 21, 2007 (Dkt. #23).  The response denies Plaintiff's claim.  Nevertheless, the filing of this exhibit does not cure the exhaustion defect in Plaintiff's Complaint.  Plaintiff was required to complete the grievance process before commencing this civil action.

Because Plaintiff commenced this action on March 26, 2007, before receiving a response to his Step II grievance and before filing a Step III grievance, he has failed to properly exhaust his claims prior to filing.  Accordingly, it is **RECOMMENDED** that both Defendant Arnold's motion for summary judgment and Defendant CMS's motion to dismiss be **GRANTED**, and this case be dismissed.

### III.  RECOMMENDATION

For the reasons stated above, it is **RECOMMENDED** that both Defendant Arnold's motion for summary judgment and Defendant CMS's motion to dismiss be **GRANTED**, and this case be dismissed. The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this report and recommendation. *Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370,1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections. A party may file a reply brief within 5 days of service of a response. The reply shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.

Dated: October 31, 2007  s/ Steven D. Pepe
Flint, MI                United States Magistrate Judge

**CERTIFICATE OF SERVICE**

This is to certify that on <u>October 31, 2007</u> , I electronically filed the foregoing Scheduling Order with the Clerk of the Court using the ECF system which will send notification of such filing to the following parties:<u> Christine M. Campbell, Michael D. Kennedy</u>, and I hereby certify that I have mailed a copy of the Scheduling Order to the following non-ECF parties:<u> Claude Boling #191936, Florence Crane Correctional Facility, 38 Fourth St., Coldwater, MI 49036</u>

<u>s/ James P. Peltier</u>
James P. Peltier
Courtroom Deputy Clerk
U.S. District Court
600 Church St.
Flint, MI 48502
810-341-7850
pete_peltier@mied.uscourts.gov